TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00124-CR







Wallace Chappell Slaton, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 47,797, HONORABLE JOE CARROLL, JUDGE PRESIDING







 A jury convicted Wallace Chappell Slaton of murder and assessed punishment at
fifteen years in prison. Tex. Penal Code Ann. § 19.02 (West 1994). We will affirm the
conviction.

 Three witnesses testified that they saw Slaton stab Matthew Martin and run away. 
They said that they did not see Martin do or say anything provocative to Slaton, but admitted that
they were not watching Slaton and Martin at all times.

 Medical examiner Joseph Prahlow testified that Martin was stabbed four times,
once in the chest and three times in the back. The chest wound proved fatal, piercing Martin's
heart and left lung. The three back wounds were relatively superficial and would not have caused
death immediately, but might have eventually with continuous bleeding or infection. Martin also
had two cuts on his left hand, indicating he attempted to ward off the blow.

 Slaton testified that he stabbed Martin in self-defense after Martin threatened to kill
him and physically attacked him. Slaton testified that Martin, a man he did not know, walked up
to his table in a bar and demanded that Slaton buy him beer. When Slaton declined, Martin
threatened his life. Slaton said he eventually offered Martin the rest of his beer and tried to leave. 
But Martin hit Slaton in the head with his fist hard enough to knock Slaton down. Slaton said
Martin then charged him. Slaton testified that he did not remember pulling his knife, but must
have when Martin charged. He remembered grappling with Martin, then running away because
he believed Martin was chasing him, and finally calling the police. He did not recall stabbing
Martin, but conceded that he must have. Other defense witnesses testified that this incident fit
with Martin's previous actions and pugnacious reputation.

 On appeal, Slaton's attorneys filed a brief and Slaton submitted his own pro se
supplemental brief. In the brief filed by his attorneys, Slaton complains about the admission of
autopsy photographs and a police report, and asserts that the district court became an advocate for
the State by recharacterizing the State's objection before granting it. In his pro se brief, Slaton
complains that his trial counsel failed to obtain a hearing on his competency to assist in his defense
and failed to explore the prior convictions and the mental health of some of the State's witnesses.

 By his first issue, Slaton contends the court erred by overruling his objection to the
admission of three closeup photographs of the stab wounds to Martin's back. Slaton objected that
the photos were cumulative of a photo of Martin's entire back that showed all three stab wounds. 
He also objected that the danger of unfair prejudice and confusion from the admission of the
photos outweighed their probative value. He objected finally that the three photos were irrelevant
because the deceased had been identified. The district court overruled the objections. We review
a district court's decisions to admit evidence for an abuse of discretion. See Chamberlain v. State,
998 S.W.2d 230, 237 (Tex. Crim. App. 1999).

 The district court did not abuse its discretion by concluding that the photos were
neither cumulative nor irrelevant. Though an admitted photo had shown all three wounds, the
closeups showed the edges of the wounds and allowed the medical examiner to explain the nature
of the weapon (e.g. that it had one sharp edge) and some aspects of its use (e.g. that the knife was
twisted some during the stabbing). The more distant photo would not have helped the medical
examiner illustrate that level of detail. The photos were thus not cumulative and were relevant
to explain the medical examiner's opinion that the knife used was sharp and capable of inflicting
serious bodily injury or death. (1) The relevance of the photos was not undone by a prior
identification of the victim. 

 Nor did the district court abuse its discretion by concluding that the unfair prejudice
or confusion created by the photos did not overwhelm their probative value. In making this
determination a district court can weigh the number of exhibits offered, their gruesomeness, their
detail, their size, whether they are black and white or color, whether they are close-up, whether
the body is naked or clothed, and the availability of other means of proof. Id. The exhibits in
the appellate record are black-and-white copies of photos. Beyond showing small gaping wounds,
the exhibits are not especially gruesome--no blood, ragged wound edges, bones, muscles, or
internal organs are visible. The medical examiner explained that he pulled the edges of the wound
apart in order to show the detail of the edges of the wounds, and explained how that showed the
sharpness of the weapon. The exhibits are 8 ½ inches by 11 inches, and the section devoted to
the wounds is a small part of that size; a ruler in the photos allows the viewer to assess the actual
size of the wounds. Martin's torso is naked in order to show the wounds. When the photos were
admitted, their probative value was strong to show the nature of the weapon and its damaging
capability. We conclude that the district court did not err by overruling Slaton's objection. We
resolve issue one against Slaton.

 Slaton next contends that the district court erred by overruling his hearsay objection
to the State's offer of a printed Temple Police Department computer record purporting to show
the address of one of his witnesses. After Linda Sholars testified during the defense case about
Martin's reputation for violence, the State attempted to attack her credibility by showing that she
lived in a residence at 816 East Avenue A, which was owned by Slaton's father; even after the
State showed her a document listing her name with the address, she denied that she ever lived at
the address or told anyone that it was her address. The State called as a rebuttal witness a Temple
police officer who found a report in department files listing Sholars as living at the Avenue A
address. After overruling Slaton's hearsay objection, the district court admitted the report with
all information redacted except Sholars's name and the address.

 We conclude that the admission of the document was harmless because the rebuttal
witness testified without objection to the substance contained in the document:



Q. Did I ask you to review the records of the Temple Police Department
with regard to a Linda Sholars?


A. Yes, sir. You did.


Q. Have you done that?


A. Yes, sir.


Q. Let me show you what's been marked as State's Exhibit 28. Specifically,
Detective, did you review the records to determine her listing as an address
of 816 East Avenue A in Temple?


A. Yes, sir. You did.


Q. Did you determine that she in 1995 had in fact given that address to the
Temple Police Department as her place of residence.


A. Yes, sir. I did.



The defense objected when the State then offered exhibit 28, but the testimony was already in
without objection. The document added nothing to the police officer's testimony. We find no
harm from the admission of the document, and resolve issue two against Slaton.

 By his third issue, Slaton contends that the district court erred by abandoning his
position as a neutral arbiter. During the punishment phase, Slaton called many character
witnesses. Jannie Tallarigo testified about the improvement in Slaton's character since the offense
and her willingness to have him live in her home if he was granted probation. The following
exchange occurred during her direct testimony:


Q. Do you feel he has come to grips with what had occurred on February 8,
1997?


A. He has told me that he is very sorry that it ever happened. Wally is a shy
person. He doesn't show his feelings very much, but he is very sorry and he
wishes that above everything--He told me, he said, "If I could take it back-- 


[Prosecutor]: Objection, Your Honor. Non-responsive.


The Court: Sustained. They will ask you some more questions, ma'am.



Slaton contends that this shows the court taking sides because Tallarigo's answer was responsive
and a proper objection, if any, would be that the answer was hearsay. Slaton contends that this
excerpt shows that, in order to support the State, the district court "took it upon itself to rule that
the answer was not admissible even though the State failed to voice the proper grounds in its
objection."

 We find no evidence of bias because the district court did not have to recharacterize
the objection in order to sustain it. Tallarigo was asked whether she felt Slaton had come to grips
with his actions. Tallarigo answered, not with the "yes" or "no" answer regarding her feelings
that the question invited, but with what Slaton told her and her opinion about his emotional
expressiveness. Though potentially supportive of her opinion regarding whether he had come to
grips with the results of his actions, her relation of Slaton's statements and her opinion that he is
shy is not strictly responsive to a question regarding her feelings about whether he had come to
grips with the murder. The district court did not err by sustaining the objection, much less show
bias in doing so. We resolve issue three against Slaton.

 By his pro se brief, Slaton essentially challenges the effectiveness of the assistance
of his trial counsel. He wonders why his counsel did not seek a judicial determination of his
capability of assisting in his own defense, and why his counsel did not attack the credibility of
State witnesses based on their criminal or psychiatric histories. Though Slaton attaches documents
to his brief that he contends establish his incompetence, these are original to this appeal. We are
limited to examining the record from the district court, and there is nothing in the record showing
his incompetence or why his counsel elected not to pursue this issue. Though Slaton asserts that
some witnesses had criminal records or psychiatric problems, use of those as impeachment may
be limited by Texas Rules of Evidence 608 and 609; as with his competence, we find nothing in
the record from the district court to explain why his counsel chose not to pursue this issue. We
conclude that the record on direct appeal is inadequate to develop an ineffective assistance claim. 
See Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); see also Oldham v. State,
977 S.W.2d 354, 363 (Tex. Crim. App. 1998) (quoting Ex parte Duffy, 607 S.W.2d 507, 513
(Tex. Crim. App. 1980)).

 We affirm the judgment.



 
 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and Smith

Affirmed

Filed: April 13, 2000

Do Not Publish
1. The State's presentation of these items preceded Slaton's admission that he must have
caused Martin's death by stabbing him. His later concession therefore did not render these
photos unnecessary at the time they were offered.



ndoning his
position as a neutral arbiter. During the punishment phase, Slaton called many character
witnesses. Jannie Tallarigo testified about the improvement in Slaton's character since the offense
and her willingness to have him live in her home if he was granted probation. The following
exchange occurred during her direct testimony:


Q. Do you feel he has come to grips with what had occurred on February 8,
1997?


A. He has told me that he is very sorry that it ever happened. Wally is a shy
person. He doesn't show his feelings very much, but he is very sorry and he
wishes that above everything--He told me, he said, "If I could take it back-- 


[Prosecutor]: Objection, Your Honor. Non-responsive.


The Court: Sustained. They will ask you some more questions, ma'am.



Slaton contends that this shows the court taking sides because Tallarigo's answer was responsive
and a proper objection, if any, would be that the answer was hearsay. Slaton contends that this
excerpt shows that, in order to support the State, the district court "took it upon itself to rule that
the answer was not admissible even though the State failed to voice the proper grounds in its
objection."

 We find no evidence of bias because the district court did not have to recharacterize
the objection in order to sustain it. Tallarigo was asked whether she felt Slaton had come to grips
with his actions. Tallarigo answered, not with the "yes" or "no" answer regarding her feelings
that the question invited, but with what Slaton told her and her opinion about his emotional
expressiveness. Though potentially supportive of her opinion regarding whether he had come to
grips with the results of his actions, her relation of Slaton's statements and her opinion that he is
shy is not strictly responsive to a question regarding her feelings about whether he had come to
grips with the murder. The district court did not err by sustaining the objection, much less show
bias in doing so. We resolve issue three against Slaton.

 By his pro se brief, Slaton essentially challenges the effectiveness of the assistance
of his trial counsel. He wonders why his counsel did not seek a judicial determination of his
capability of assisting in his own defense, and why his counsel did not attack the credibility of
State witnesses based on their criminal or psychiatric histories. Though Slaton attaches documents
to his brief that he contends establish his incompetence, these are original to this appeal. We are
limited to examining the record from the district court, and there is nothing in the record showing
his incompetence or why his counsel elected not to pursue this issue. Though Slaton asserts that
some witnesses had criminal records or psychiatric problems, use of those as impeachment may
be limited by Texas Rules of Evidence 608 and 609; as with his competence, we find nothing in
the record from the district court to explain why his counsel chose not to pursue this issue. We
conclude that the record on direct appeal is inadequate to develop an ineffective assistance claim. 
See Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); see also Oldham v. State,
977 S.W.2d 354, 363 (Tex. Crim. App. 1998) (quoting Ex parte Duffy, 607 S.W.2d 507, 513
(Tex. Crim. App. 1980)).

 We affirm the judgment.



 
 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and Smith

Affirmed

Filed: April 13, 2000

Do Not Publish
1. The State's presentation of these items preceded Slaton's admission that he must have
caused Martin's death by stabbing him.